**CASSADY A. ADAMS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT   59403**
**119 First Ave. North, Suite 300**
**Great Falls, MT   59401**
**Phone: (406) 761-7715**
**FAX: (406) 453-9973**
**E-mail: Cassady.Adams@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 19-45-GF-BMM** |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| vs. | |
| **MYCHAL THOMAS DAMON,** | |
| Defendant. | |

### INTRODUCTION

The defendant, Mychal Thomas Damon, pleaded guilty to Felony Child Abuse, in violation of 18 U.S.C. § 1153 and Mont. Code Ann. § 45-5-212(1) on February 19, 2020. PSR ¶ 9. The possible prison term for this charge is up to five

1

years. PSR ¶ 80. The presentence report has calculated the defendant's total offense level as 31, PSR ¶ 33, and the defendant's criminal history category as I. PSR ¶ 38. The presentence report calculates the defendant's advisory guideline term to be 60 months. PSR ¶ 81. *See also* USSG § 5G1.1(a).

Pursuant to the plea agreement entered by the parties, (Doc. 102), the United States requests that the Court impose a custody sentence of time served followed by a term of supervised release.

## OFFENSE CONDUCT

Around the end of May 2018, Jane Doe (age six) and her mother spent the night at the defendant's and defendant's sister's house in Wolf Point, Montana, on the Fort Peck Indian Reservation. PSR ¶ 14. In the middle of the night, Jane Doe got up and sat in the defendant's lap in his chair in the living room. PSR ¶¶ 14-15. The defendant touched Jane Doe's vagina at that time. *Id.*

Jane Doe's mother awoke in the middle of the night and observed the defendant sitting in his chair with Jane Doe in his lap. PSR ¶ 14. The defendant told the mother that Jane Doe was fine and he had her. *Id.* The mother told Jane Doe to come back to her on the couch. *Id.*

On Sunday of the same weekend, Jane Doe told her mother that she didn't like sitting in the chair with the defendant because he scratched her on her vagina.

PSR ¶ 14. Jane Doe told her mother that the defendant put his fingers in her vagina. *Id.* At a later date, Jane Doe reported that she did not like it when Mychal picked at it (her vagina), and it made her feel hurt. PSR ¶ 15. In her forensic interview, Jane Doe reported that Mychal touched her over her clothes. *Id.*

On January 25, 2019, the defendant was interviewed by SAs David Burns and Burke Lanthorn at the Glasgow FBI office. He denied the sex assault allegation. (Doc. 104 at 4).

In a follow-up interview on March 13, 2019, the defendant admitted to FBI agents that he had touched Jane Doe inappropriately. PSR ¶ 16. He advised that, on the date in question, he was sitting in a recliner and Jane Doe was sitting on his lap. *Id.* He placed his hand inside Jane Doe's shorts and touched her vagina for approximately five to ten seconds. *Id.* The defendant denied penetrating Jane Doe's vagina, but he did say that the contact was skin to skin. *Id.*

This crime has had an adverse effect on the victim's mental health and has caused her to suffer anxiety. PSR ¶ 19.

## SENTENCING ARGUMENT

I. **18 U.S.C. 3553(a) Sentencing Factors**

There are general factors that district courts must take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs

3

courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Several of the § 3553(a) factors warrant particular consideration in this case, including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of our criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . afford adequate

4

deterrence . . . protect the public . . . ." and to provide needed training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

### A. Nature and Circumstances of the Offense / Defendant's History and Characteristics

In this case, the defendant committed felony child abuse by molesting the victim, who suffered physical pain and mental trauma. PSR ¶¶ 15, 19. The defendant had consumed two liters of wine on the evening that he committed the crime. PSR ¶ 16.

The defendant was employed at Fort Peck Law Enforcement Services, initially as a dispatcher and subsequently as a tribal police officer, from January 2014 to April 2019. PSR ¶ 72. He witnessed trauma in his role as a police officer, PSR ¶ 54, but through his actions in this case, he has caused trauma to the victim.

It is apparent from the presentence report that the defendant suffers from a significant alcohol issue, which led to him committing the instant offense. PSR ¶¶ 16, 22, 52, 56, 58, 60 et seq. He began consuming alcohol as a teenager, PSR ¶ 58, and reported that he is "more stable when sober." PSR ¶ 54. While on pretrial release for this case, the defendant violated his conditions by consuming alcohol, which caused his pretrial release to be revoked. *See* Docs. 17-1, 40.

### B. Need for the Sentence Imposed to Serve the Purpose of the Criminal Laws

The sentence in this case should serve the purpose of the criminal laws.

### 1. Seriousness of the Offense

This offense was serious because, as explained above, it involved harming a six-year-old girl. PSR ¶¶ 14-16. No child should be put in the position that the victim in this case was placed in, and the victim has been receiving ongoing therapy. PSR ¶ 19. It is unknown how she will be affected by this crime in the long term, as she grows up and is more fully able to understand what happened to her. The United States believes that the plea agreement in this case appropriately takes into account the difficulties that the victim would have faced if the case had proceeded to trial. *See* PSR ¶ 82.

### 2. Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence.

The sentence imposed by the Court should promote a respect for the law, provide just punishment, and afford adequate deterrence. It should hold the defendant accountable for his crime to ensure that the crime does not happen again.

### 3. Protect the Public

The defendant has been in custody since August 2019, when he was arrested on pretrial release violations. PSR ¶¶ 5-6. While the defendant has been in custody, the public has been protected from him. When the defendant is released from custody on pretrial release, he should be closely monitored by the United States

6

Probation Office to ensure that he does not reoffend or consume alcohol.

### 4. Provide Training, Treatment, and Care to the Defendant

The defendant would benefit from substance abuse treatment while he is on supervised release. Additionally, because this crime involved the defendant touching the victim's vagina, the defendant has agreed in the plea agreement to obtain a sex offender evaluation and follow all treatment recommendations while he is on supervised release. (Doc. 102).

### CONCLUSION

As the Court is fully aware, plea agreements are governed by principles of contract law, and the government is obliged to abide by the terms of the agreements to which it is a party. Here, the government recommends, in accordance with the plea agreement, that the defendant's offense level be decreased by three levels for acceptance of responsibility and a timely plea, and also that the defendant be sentenced to time served in custody with no additional prison sentence, followed by a period of supervised release for three years.

Three years is the maximum term of supervised release allowed by statute, and it is necessary to ensure that the defendant receives the substance abuse treatment and any sex offender treatment that he may need. It is also necessary to ensure that the defendant is able to safely live in the community.

Additionally, the United States requests that the defendant have no contact with Jane Doe (the victim in this case). Pursuant to the plea agreement, the defendant should be ordered to obtain a sex offender evaluation from a sex offender treatment provider approved by United States Probation within the first three months of his supervised release and follow all treatment recommendations.

DATED this 8th day of June, 2020.

>KURT G. ALME
>United States Attorney
>
>*/s/ Cassady A. Adams*
>CASSADY A. ADAMS
>Assistant U.S. Attorney